IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GILBERTO RODRIGUEZ VELAZQUEZ,
et al.,

    Plaintiffs,

    v.

AUTORIDAD METROPOLITANA DE
AUTOBUSES,

    Defendant.

CIVIL NO. 03-2331 (RLA)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, AUTORIDAD METROPOLITANA DE AUTOBUSES ("AMA"), has moved the court to enter summary judgment dismissing the instant complaint on various grounds. The court having reviewed the arguments of the parties together with the documents submitted in support of defendant's request hereby finds that dismissal of the federal causes of action is warranted based on timeliness grounds as well as plaintiff's failure to exhaust the requisite administrative remedies. Accordingly, there is no need to address the alternate grounds advanced by defendant in support of its petition for dismissal.

**THE FACTS**

The following facts are not disputed.

1.    Plaintiff, GILBERTO RODRIGUEZ VELAZQUEZ, commenced working with AMA on **August 8, 1988**.

CIVIL NO. 03-2331 (RLA)                                          **Page 2**

2.    On **May 2, 1994,** RODRIGUEZ VELAZQUEZ suffered a work-related accident and reported to the STATE INSURANCE FUND ("SIF") for treatment.

3.    RODRIGUEZ VELAZQUEZ returned to work in **May 1995.**

4.    Upon his return to work in May 1995, RODRIGUEZ VELAZQUEZ could not perform his prior duties as a skilled mechanic without reasonable accommodation.

5.    In **December 1995,** RODRIGUEZ VELAZQUEZ requested a disabled-person parking space.

6.    In **January 1996,** RODRIGUEZ VELAZQUEZ again reported to the SIF.

7.    Thereafter, RODRIGUEZ VELAZQUEZ returned to work in **January 1999.**

8.    On **March 15, 2000,** RODRIGUEZ VELAZQUEZ filed an administrative claim with the EEOC.

9.    The EEOC issued RODRIGUEZ VELAZQUEZ a Right to Sue Letter on **September 15, 2003.**

10.   The instant complaint was filed on **December 15, 2003.**

### SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).  A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).  A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing

CIVIL NO. 03-2331 (RLA)                                              **Page 4**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely

CIVIL NO. 03-2331 (RLA)                                         Page 5

upon "conclusory allegations, improbable inferences, and unsupported speculation". <u>Lopez-Carrasquillo v. Rubianes</u>, 230 F.3d 409, 412 (1st Cir. 2000); <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994); <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

## THE COMPLAINT

Plaintiff asserts claims under the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 793, *et seq.*, Puerto Rico Law 100 of May 30, 1959, P.R. Laws Ann. tit. 29, § 146 *et seq.* (2002) and Puerto Rico Law 44 of July 2, 1985, P.R. Laws Ann. tit. 1, § 501 *et seq.*, (1999) for alleged disability discrimination.

According to the complaint, plaintiff GILBERTO RODRIGUEZ VELAZQUEZ commenced working for AMA in 1988 as a "skilled mechanic" until May 2, 1994, when he suffered a work-related accident. As a result thereof, plaintiff was absent from work approximately one year while receiving treatment from the SIF.

Plaintiff returned to work at AMA in May 1995, with a SIF certification of 35% disability and a recommendation for reasonable accommodation. Plaintiff claims he was provided a bench to perform his duties but denied "a proper reasonable accommodation, which includes a parking space for disable [sic] persons [such as plaintiff] and properly functioning elevators and/or ramps,

nothwistanding [plaintiff's] constant demands for said accommodations". Complaint ¶ 25.

Plaintiff again reported to the SIF in January 1996, where he received treatment for the next three years.

In January 1999, plaintiff went back to work at AMA. "Before returning to work SIF recommended to AMA to modify [plaintiff's] work schedule and to provide him again with a bench to perform his duties as a reasonable accommodation." Complaint ¶ 28.

"Notwithstanding the SIF's clear and unambiguous recommendation, AMA denied [plaintiff] the recommended bench and did not modify [his] work schedule. Furthermore, AMA continued to deny [plaintiff] with a parking space for a qualified individual with disabilities, and did not have properly working elevators and/or ramps." Complaint ¶ 29.

"Due to [plaintiff's constant demands for his rights and necessary reasonable accommodation, AMA... forced [plaintiff to perform duties that were detrimental to his physical disability and constantly discriminated against him.... AMA... denied [plaintiff] a toolbox that all employees of his same rank were entitled to; forced to work for the full 8-hour period standing up; denied the parking space constantly requested by [plaintiff]; continued to grant salary increases and other benefits to other non-disable [sic] employees in the same work area as [plaintiff]; constantly filed unjustified and baseless reports against [plaintiff] in order to intimidate him; and

CIVIL NO. 03-2331 (RLA)                                           **Page 7**

continuously proffer derogatory comments against [plaintiff] due to this disability." Complaint ¶ 31.

Plaintiff again reported to the SIF on August 5, 1999, where, in less than a month, was granted 100% disability status.

On June 6, 2003, "in another discriminatory action [AMA] proceeded to terminate [plaintiff's] employment based on a falsely (sic) absentee allegation." Complaint ¶ 35.

### ELEVENTH AMENDMENT IMMUNITY

Defendant raises Eleventh Amendment immunity as to the ADA-related claims.

ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 372, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). It is evident from a reading of the complaint that the claims under ADA are based exclusively on defendant's alleged failure to grant him a reasonable accommodation in his work under Title I.

Under Garrett, states have been found to be immune from Title I ADA suits in federal court based on the protection afforded by the Eleventh Amendment.[1]

---

[1]  This immunity has not been extended to certain Title II ADA actions. *See, i.e.*, Tennessee v. Lane, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (case involving access to courts brought by

CIVIL NO. 03-2331 (RLA)                                    Page 8

The Eleventh Amendment to the United States Constitution bars the commencement and prosecution in federal court of suits claiming damages brought against any state, including Puerto Rico, without its consent. <u>Toledo v. Sanchez</u>, 454 F.3d 24 (1st Cir. 2006); <u>Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico and Caribbean Cardiovascular Ctr. Corp.</u>, 322 F.3d 56, 61 (1st Cir. 2003); <u>Futura Dev. v. Estado Libre Asociado</u>, 144 F.3d 7, 12-13 (1st Cir. 1998); <u>In re San Juan Dupont Plaza Hotel Fire Lit.</u>, 888 F.2d 940, 942 (1st Cir. 1989); <u>Ramírez v. P.R. Fire Serv.</u>, 715 F.2d 694, 697 (1st Cir. 1983).

Eleventh Amendment immunity applies even though the state has not been named in the suit. Its protection is extended to governmental entities which are deemed an arm or alter ego of the state. <u>Royal Caribbean Corp. v. Puerto Rico Ports Auth.</u>, 973 F.2d 8, 9-10 (1st Cir. 1992); <u>In re San Juan Dupont Plaza Hotel Fire Lit.</u>, 888 2d at 943-44.

The principal factors to weigh in determining whether or not a particular entity qualifies as an alter ego of a state, are whether the agency exercises a governmental or a proprietary function and whether an adverse judgment will be satisfied from public or separate

individuals protected by the statute); <u>Toledo v. Sanchez</u>, (student purportedly denied accommodation at public education facility). Although addressed at a lower level, the Eleventh Amendment's applicability to Title III suits is yet to be resolved by the United States Supreme Court. *See, i.e.,* <u>Simmang v. Texas Bd. of Law Examiners</u>, 346 F.Supp.2d 874 (W.Tex. 2004) (Title III suits barred by the Eleventh Amendment).

agency funds.  Royal Caribbean Corp., 973 F.2d at 9-10; In re San Juan Dupont Plaza Hotel Fire Litigation, 888 2d at 943-44.  In examining the nature of the agency's function, we must scrutinize it within the specific context of the claims asserted in the complaint. Royal Caribbean.

Additionally, the analysis should include consideration of "the agency's degree of autonomy; the power of the agency to sue and be sued and enter into contracts; whether the agency's property is immune from state taxation and whether the state has insulated itself from responsibility for the agency's operations." M/V Manhattan Prince, 897 F.2d 1, 9 (1st Cir. 1990).  See also, Ainsworth Aristocrat Int' Pty., Ltd. v. Tourism Co. of Puerto Rico, 818 F.2d 1034, 1037 (1st Cir. 1987).

The protection afforded by the Eleventh Amendment to governmental entities is not automatic.  Its applicability depends on a number of factors including the degree of administrative autonomy and fiscal independence enjoyed by the entity which, in this particular case, remain unknown to the Court.  Absent evidence of the relevant facts essential to conducting a proper analysis, the Court is unable to make a determination regarding the applicability of the Eleventh Amendment immunity to the petitioning defendant.

Other than raising the immunity defense, AMA has not met its burden of pointing to the evidence indicative that it is indeed an alter ego of the Commonwealth of Puerto Rico and entitled to Eleventh

CIVIL NO. 03-2331 (RLA)                                         **Page 10**

Amendment protection. Rather, AMA's organic act specifically provides that it is a "public corporation having legal existence and personality separate and apart from those of the Government"[2] with an independent economic existence."[3]

Faced with this scenario, we find AMA's Eleventh Amendment argument without merit.

### EEOC CHARGE

ADA incorporated the exhaustion requirements applicable to Title VII discrimination suits. Thus, "a claimant who seeks to recover for an asserted violation of Title I of the ADA, like one who seeks to recover for an asserted violation of Title VII, must first exhaust administrative remedies by filing a charge with the EEOC, or alternatively, with an appropriate state or local agency, within the prescribed time limits... This omission, if unexcused, bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of suit." Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st 1999).

Prior to resorting to the courts for relief, plaintiffs must present their discrimination claims under Title VII to the appropriate agency. "In light of the statutory scheme, it is unsurprising that, in a Title VII case, a plaintiff's unexcused

---

[2]   P.R. Laws Ann. tit. 23 § 603(a) (1999).

[3]   *Id.* at § 603(b).

CIVIL NO. 03-2331 (RLA)                                    **Page 11**

failure to exhaust administrative remedies effectively bars the courthouse door." Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). "In order to prosecute a [Title VII] claim... an aggrieved party must first file a timely administrative complaint." Noviello v. City of Boston, 398 F.3d 76, 85 (1st Cir. 2005). "[P]laintiffs [may] not proceed under Title VII without first exhausting administrative remedies." Lebron-Rios v. U.S. Marshal Service, 341 F.3d 7, 13 (1st Cir. 2003); Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999). "Title VII requires that an aggrieved individual exhaust his or her administrative remedies as a prerequisite to filing suit in federal court." Dressler v. Daniel, 315 F.3d 75, 78 (1st Cir. 2003). "Title VII requires, as a predicate to a civil action, that the complainant first file an administrative charge with the EEOC within a specified and relatively short time period (usually 180 or 300 days) after the discrimination complained of". Clockedile v. New Hampshire Dept. of Corrections, 245 F.3d 1, 3 (1st Cir. 2001).

The purpose behind the exhaustion requirement is to give the employer timely notice of the events as well as provide an opportunity for an early amicable resolution of the controversy. "That purpose would be frustrated... if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." Lattimore v. Polaroid Corp., 99 F.3d. 456, 464 (1st Cir. 1996).

CIVIL NO. 03-2331 (RLA)                                    Page 12

---

In Puerto Rico, an aggrieved employee has 300 days from the occurrence of the employment action complained of to file an administrative charge in instances where the local Department of Labor is empowered to provide relief, i.e., in instances of "deferral" jurisdiction. Bonilla, 194 F.3d at 278 n.4; Lebron-Rios v. U.S. Marshal Serv., 341 F.3d 7, 11 n.5 (1st Cir. 2003). Otherwise, the applicable period is 180 days. *See*, 42 U.S.C. § 2000e-5(e)(1).[4]

On the other hand, the Puerto Rico Anti-Discrimination Unit of the Department of Labor has no jurisdiction over Title VII retaliation claims and thus, is not deemed a Designated Agency under § 2000e-5(e)(1). Therefore, claims for retaliation must be filed with the EEOC within 180 days from the events complained of.[5]

---

[4]   In pertinent part, § 2000e-5(e)(1) reads:

> A charge under this section shall be filed within **one hundred and eighty days** after the alleged unlawful employment practice occurred... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto... such charge shall be filed by or on behalf of the person aggrieved within **three hundred days** after the alleged unlawful employment practice occurred.

(Emphasis ours).

[5]   The designation of Puerto Rico as a "deferral" state for Title VII violations specifically excludes retaliation claims asserted under Sec. 704(a), 42 U.S.C. § 2000e-3(a). *See*, 29 C.F.R. § 1601.74.

CIVIL NO. 03-2331 (RLA)                                     **Page 13**

Plaintiff filed a discrimination charge with the EEOC on March 15, 2000, which asserts discrimination based on ADA and religion. In pertinent part, it reads:

Since 12/95 I have been requesting some type of reasonable accommodation (Title I, A.D.A), (Public Law 44), that areas of the General garage (parking) M.B.A. and the rest of the facilities be modified for persons with disabilities. Since 10/95 to the present I have had a special permit to park in the parking for the disabled... and it has been continuously denied... I consider that I have been discriminated against because of my religious beliefs and my disability... I request that you comply with what has been stipulated in the A.D.A.... reasonable accommodation (parking)....

Clearly, the only references to ADA discrimination in the aforementioned charge pertain to adequate parking and building facilities for the disabled. No mention is made regarding failure to grant plaintiff a reasonable accommodation in his working conditions as per the SIF's recommendations nor of harassment due to his disability or retaliation as suggested in the complaint.

Therefore, any attempts by plaintiff to litigate matters involving alleged disability discrimination for failure to provide him reasonable accommodation in his working conditions and/or retaliation are foreclosed.

CIVIL NO. 03-2331 (RLA)                                        **Page 14**

Only those allegations regarding special parking needs as well as the request for "the rest of the facilities [to] be modified for persons with disabilities" need be addressed in this Order.[6]

### HOSTILE WORK ENVIRONMENT

Plaintiff argues that claims based on the parking and building conditions are not time-barred because his "cause of action is based on AMA's continuous acts that in the aggregate constitute a hostile work environment that culminated with the unjust termination of plaintiff's employment after plaintiff filed a complaint in [sic] the EEOC." Opposition to Motion for Summary Judgment ¶ 6 (docket No. 53).

It has been held that, similar to Title VII discrimination actions, ADA-covered individuals may assert hostile work environment claims premised on disability-based harassment. Shaver v. Independent Stave Co., 350 F.3d 716 (8th Cir. 2003); Fox v. Gen. Motors Corp., 247 F.3d 169 (4th Cir. 2001); Flowers v. Regional Physician Serv., Inc., 247 F.3d 229 (5th Cir. 2001). See also, Quiles-Quiles v. Henderson, 439 F.3d 1, 5 n.1 (1st Cir. 2006) (allowing disability-harassment claim under the Rehabilitation Act).

Further, the elements used for Title VII hostile environment claims have been adapted to ADA cases. "Accordingly, to succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that [he] belongs to a protected group; (2) that [he] was subjected

---

[6] It should also be noted that no allegations of religious bias appear in the pleadings.

CIVIL NO. 03-2331 (RLA)                                          Page 15

to unwelcome harassment; (3) that the harassment complained of was based on [his] disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." <u>Flowers</u>, 247 F.3d at 235; <u>Fox</u>, 247 F.3d at 178.

"To recover on a hostile environment claim, a plaintiff must demonstrate not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." <u>Flowers</u>, 247 F.3d at 235; <u>Shaver</u>, 350 F.3d at 721.

The court must consider the following factors in assessing whether the conduct constitutes an abusive work environment: "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." <u>Flowers</u>, 247 F.3d at 236 (citations and internal quotations omitted); <u>Fox</u>, 247 F.3d at 178.

However, as previously noted, the EEOC charge is completely devoid of any reference to events other than the parking and facilities conditions. There is no reference in the EEOC charge to a hostile work environment or disability based harassment.[7]

---

[7] Further, the complaint fails to plead such a claim. There are no factual allegations in the pleading which would even remotely be construed to assert such a cause of action.

**CIVIL NO. 03-2331 (RLA)**                                    **Page 16**

---

Accordingly, we reject plaintiff's arguments regarding a hostile work environment and find that plaintiff is precluded from asserting these claims which clearly fall outside the purview of the administrative charges.

### PARKING AND BUILDING FACILITIES

In the alternative, plaintiff contends that the ADA claims based on the allegations regarding the parking and building facilities are timely inasmuch as he "constantly" requested AMA for these particular accommodations.

However, apart from this general and conclusory statement, plaintiff has failed to present evidence to establish that indeed, his last requests for accommodation pertaining to the parking and other building facilities fell within 300 days prior to submitting the EEOC charge on March 15, 2000.

Hence, these claims must also be dismissed.

### REHABILITATION ACT

We find there is no viable claim under the Rehabilitation Act, 29 U.S.C. § 794(a). This particular statute precludes disability discrimination under programs receiving Federal financial assistance, *see* Lesley v. Hee Man Chie, 250 F.3d 47, 53 (1st Cir. 2001) or conducted by federal executive agencies, *see*, Feliciano-Hill, 439 F.3d 1; Quiles-Quiles, 439 F.3d 1 (1st Cir. 2006). Plaintiff has not presented evidence that defendant qualified for protection under this statutory provision.

CIVIL NO. 03-2331 (RLA)                                    Page 17

**CONCLUSION**

Based on the foregoing, the Motion Requesting Summary Judgment filed by AMA (docket No. **44**)[8] is hereby **GRANTED** and the claims asserted under ADA and the Rehabilitation Act are hereby **DISMISSED**.

It is further ORDERED that the supplemental claims asserted under Law 100 and Law 44 are hereby **DISMISSED WITHOUT PREJUDICE**.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 19th day of April, 2007.


                                   S/Raymond L. Acosta
                                  RAYMOND L. ACOSTA
                              United States District Judge

---

[8] *See also*, plaintiffs' Opposition (docket No. **53**) and AMA's Reply (docket No. **58**).